***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At all relevant times, Employer-Defendant regularly employed three (3) or more employees and was bound by the North Carolina Workers' Compensation Act.
2. The Employer/Employee relationship existed between the Employer-Defendant and the Employee-Plaintiff on or about October 7, 2001, the date of the compensable injury by accident.
3. Employee-Plaintiff's average weekly wage for this claim was $147.57 per week, yielding a compensation rate of $98.38 at all relevant times herein.
4. Specialty Risk Services provided defendant-employer with workers' compensation coverage at all relevant times herein.
5. The Parties stipulated that all Industrial Commission forms may be accepted into the record.
6. The Parties stipulated that all relevant medical records of the Plaintiff may be accepted into the record.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On October 7, 2001, Plaintiff was forty-seven (47) years old and employed as a waitress for Employer-Defendant.
2. Plaintiff sustained an admittedly compensable injury to her left foot on October 7, 2001 when a cup of hot water was accidentally spilled upon her while she performed her job duties as a waitress. Plaintiff's average weekly wage was $147.57, yielding a compensation rate of $98.38.
3. On October 7, 2001, the day of the accident, Plaintiff reported to the Northeast Medical Center Emergency Room where she complained of pain and swelling in her left foot. Plaintiff was diagnosed with having a second degree burn on her left foot by Dr. Earl Myers who stated that the burn encompassed less than one percent (1%) total body surface area. Defendants accepted the accident as compensable pursuant to a Form 60.
4. Plaintiff was referred to Dr. Michael Meighen of Northeast Orthopaedics. Dr. Meighen is board certified in physical medicine rehabilitation. Plaintiff's family physician, Dr. Christopherson, had treated Plaintiff with water therapy, range of motion exercises and dressing changes. Dr. Meighen examined Plaintiff on November 9, 2001. Plaintiff reported with a second degree burn on the dorsum (top) of her left foot. Dr. Merghen was concerned that Plaintiff may be suffering from complex regional pain syndrome type one (also called reflex sympathetic dystrophy, or RSD).
5. On December 31, 2001, Plaintiff was examined by Dr. James Sebold, a board certified orthopaedic surgeon of Charlotte Orthopaedic Specialists. Physical examination performed on Plaintiff revealed the burn on Plaintiff's foot looked like it was healed. Dr. Sebold diagnosed Plaintiff with just having soft tissue pain and not necessarily full-blown RSD. On December 31, 2001, Dr. Sebold testified that Plaintiff's physical examination did not reveal any RSD symptoms.
6. On January 25, 2002, Plaintiff reported to Dr. Sebold with an MRI scan results. The MRI revealed an osteochondral lesion on the talus of Plaintiff's foot. Dr. Sebold testified that the osteochondral lesion was not caused by the October 7, 2001 accident where hot water had been spilled upon Plaintiff's foot.
7. Dr. Sebold stated that Plaintiff just needed time for her soft tissue injuries to recover, and that Plaintiff could return to be examined by him on an as needed basis. Plaintiff was released from Dr. Sebold's care without restrictions.
8. On February 8, 2002, Dr. Meighen examined Plaintiff and spoke with her regarding results from her EMG nerve conduction studies. The EMG nerve conduction studies produced normal results. Dr. Meighen stated that the "osteochondral lesion is not related to her work injury." Dr. Meighen stated that "at this point, the patient has reached maximum medical improvement in relation to her burn injury. Plaintiff was given a zero percent (0%) permanent partial disability rating in relation to the burn and was released by Dr. Meighen to work full duty without restrictions.
9. Plaintiff did not present for treatment with Dr. Sebold again until July 24, 2002. On this date, Dr. Sebold had a long discussion with Plaintiff explaining to her that the ostcochondral lesion was not caused by the injury at work. Dr. Sebold gave Plaintiff a ten percent (10%) permanent partial disability rating to her left foot. Dr. Sebold testified, and the Full Commission finds as fact, that Plaintiff's pain complaints on July 24, 2002 were clearly out of proportion to the injury.
10. On February 11, 2002, Plaintiff presented to Dr. Robert Liesman, a board certified podiatrist, for treatment. Plaintiff asked Dr. Liesman about the relation of her osteochondral lesion to her accident at work. Dr. Liesman testified that he did not find the accident at work to have caused the osteochondral lesion. Dr. Liesman informed Plaintiff that the osteochondral lesion was a pre-existing injury, and that the symptoms of her left ankle are coming from her osteochondral lesion. Furthermore, Dr. Liesman testified that his physical examination did not reveal RSD symptoms in the Plaintiff by stating that Plaintiff's symptoms were not RSD.
11. Defendants filed a Form 24 application to terminate benefits on February 19, 2002 due to the fact that Plaintiff had been released at maximum medical improvement (MMI) with no restrictions. Plaintiff objected to Defendants' Form 24 application.
12. Special Deputy Commissioner Matthew Harbin ruled that Plaintiff was able to return to work full duty, and that Defendants had succeeded in showing the Plaintiff is no longer totally disabled. Defendants were allowed to terminate Plaintiff's TTD benefits as of February 25, 2002.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On October 7, 2001, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff reached maximum medical improvement on February 8, 2002. Plaintiff was released to full duty work without restrictions and was given a ten percent (10%) permanent partial disability rating to her left foot by Dr. James Sebold on July 24, 2002. N.C. Gen. Stat. § 97-31.
3. Plaintiff's alleged contraction of RSD and diagnosis of an osteochondral lesion are not related to her compensable injury by accident, and Defendants are not liable for payment of any benefits related to these conditions. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim that she is entitled to total disability benefits, medical benefits and permanent partial disability benefits is hereby DENIED on the grounds that Plaintiff's medical treatment and resulting disability is not related to Plaintiff's original injury by accident.
2. Defendants shall compensate Plaintiff for the ten percent (10%) permanent partial disability rating given to her left foot by Dr. Sebold. Said compensation shall be pursuant to N.C. Gen. Stat. §97-31.
3. Plaintiff's attorney is entitled to twenty-five percent (25%) of the award granted in paragraph number 2. Said amount shall be deducted and paid directly to Plaintiff's attorney.
4. Defendants shall pay the costs, including an expert witness fee of $225.00 to Dr. Robert Mitchell Liesman unless previously paid by prior order.
This the ___ day of May, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________ DIANNE SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER